UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| JEFFREY LEE GRAGG, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 10-138-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Jeffrey Lee Gragg and Defendant Michael J. Astrue, Commissioner of Social Security. [Record Nos. 11, 12] Gragg argues that he is disabled and that there is not substantial evidence to support the decision of the administrative law judge (ALJ). He seeks an award of benefits or remand for a new hearing and decision. However, the Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed. For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief sought by Gragg.

**I.**

On November 9, 2007, Gragg applied for a period of disability and disability insurance benefits under Title II of the Social Security Act. He alleged a disability beginning January 22, 2006. [Tr., p. 83] The application was denied initially and upon reconsideration. [Tr., pp. 71-74,

-1-

76-78] Gragg, along with his attorney Elizabeth Broyles and vocational expert James Miller, appeared before ALJ Andrew Sloss on May 5, 2009, in London, Kentucky. [Tr., p. 23] In a hearing decision dated July 17, 2009, ALJ Sloss found that Gragg was not disabled under sections 216(i) and 223(d) of the Social Security Act and, therefore, was not entitled to a period of disability or disability insurance benefits. [Tr., p. 21]

Gragg was forty-seven years old at the time of the administrative hearing. He has a high school education and attended college for one year. [Tr., p. 26] He has past work experience as a die casting machine operator in a factory. [Tr., p. 123] His alleged disability stems from nerve and anger problems; back, neck, shoulder, and arm pain; chronic nose bleeds due to hereditary hemorrhagic telangiectasia (HHT); high blood pressure; and a heart condition. [Tr., p. 122] After reviewing the record and the testimony presented at the hearing, the ALJ concluded that Gragg suffered from the severe impairments of HHT, depression, anxiety, degenerative disc disease, and right shoulder pain. [Tr., p. 13] Notwithstanding these impairments, the ALJ found that Gragg retained the residual functional capacity (RFC)

> to perform medium work . . . with no more than frequent climbing ramps/stairs, balancing, stooping, crouching, kneeling, and crawling. He can never climb ladders, ropes, and scaffolds and is limited to jobs where he has only occasional interaction with the public.

[Tr., p. 17] As a result of this assessment, Gragg was denied a period of disability and disability insurance benefits. [Tr., p. 21]

## II.

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment

of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

First, the claimant must demonstrate that he is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, the claimant must show that he suffers from a severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the Commissioner will then review the claimant's residual functional capacity and relevant past work to determine whether he can do past work. If he can, he is not disabled. 20 C.F.R. § 404.1520(f).

Under the fifth step of the analysis, if the claimant's impairment prevents him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g). The Commissioner has

the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial-evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Thus, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

**III.**

Gragg asserts that ALJ Sloss erred in evaluating the evidence regarding his physical impairments. He further contends that the ALJ improperly discounted the opinion of an

examining source, Dr. Crystal Sahner, regarding his mental condition. Each of Gragg's arguments will be addressed in turn.

### A. Physical Impairments

Gragg first alleges error in the ALJ's evaluation of his shoulder problems. He maintains that the ALJ failed to take into account an electromyogram (EMG) performed in March 2008 that showed possible nerve injury. [Record No. 11-1, pp. 9-10; *see* Tr., p. 476 (EMG "results were consistent with . . . [p]ossible bilateral axonal pathology of the axillary nerve in the area of the quadrangular space.")] According to Gragg, ALJ Sloss based his decision on the report of a doctor who had not seen the results of that EMG. [Record No. 11-1, p. 9] He also asserts that the ALJ's decision "omits mention of" the test. [*Id.*, p. 9; *see id.*, p. 10] In fact, however, the ALJ noted that Gragg had been referred to a neurosurgeon at the University of Kentucky for possible surgery "following a nerve conduction study in March 2008." [Tr., p. 14] ALJ Sloss then cited an exhibit that included treatment notes of Dr. Glen McClung — the orthopaedic surgeon who ordered the EMG — and the EMG results.[1] [*Id.*; *see* Tr., pp. 474-81] Gragg's suggestion that the ALJ was unaware of the March 2008 EMG is therefore unpersuasive.

Further, the Court does not agree that the ALJ "cited in support" or "relie[d] on" the report of Dr. Kevin Nelson, a University of Kentucky neurologist who examined Gragg in May 2008 (but who did not, according to Gragg, see the results of the March 2008 EMG). [Record No. 11-1, p. 9] The ALJ mentioned Dr. Nelson's report in his summary of the medical evidence.

---

1   Although Dr. McClung apparently concluded from the EMG results that Gragg "has bilateral axonal pathology of the axillary nerve," his notes give the impression that he was somewhat skeptical concerning the necessity of surgery: he stated that he was referring Gragg to the University of Kentucky "for the possibility of neurolysis, if that is really what he needs." [Tr., p. 475]

[*See* Tr., p. 15] However, he did not cite it in support of the RFC he assigned to Gragg. [*See* Tr., pp. 17-20] Nothing in the ALJ's decision suggests that he gave undue weight to Dr. Nelson's opinion.

It is true, as Gragg points out, that the ALJ erred in stating that Gragg had never been prescribed physical therapy. [Record No. 11-1, p. 10; *see* Tr., p. 18] In fact, physical therapy was prescribed by Dr. Guy Sava, who examined Gragg on January 29, 2008, and diagnosed him with carpal tunnel syndrome. [Tr., p. 455] However, this error is harmless, as physical therapy was only one of a litany of factors cited by the ALJ in support of his conclusion. [*See* Tr., pp. 17-18] In addition, while Gragg complains that ALJ Sloss did not acknowledge that he might be unable to afford certain treatments, the ALJ merely observed that Gragg had not "been *referred to* a pain clinic or *prescribed* . . . narcotic pain medication." [Tr., p. 18 (emphases added)] Whether Gragg could afford such treatments is irrelevant. Instead, their significance is that Gragg's condition does not, judging from his medical records, warrant them.[2]

Gragg further contends that the ALJ did not consider how his HHT would affect his ability to work. [Record No. 11-1, p. 10] Yet, as Gragg points out, ALJ Sloss "acknowledg[ed] that [Gragg] has 'a longstanding history of epistaxis and was diagnosed with hereditary hemorrhagic telangiectasia . . . in March 2004.'" [*Id.* (quoting Tr., p. 14)] The ALJ also noted Gragg's testimony at the hearing that he suffers daily nosebleeds as a result of his HHT [Tr., p.

---

2   The Court notes that Gragg is apparently able to afford a number of prescription medications for, among other things, depression, high blood pressure, and acid reflux. [*See* Tr., p. 138 (listing current medications)]

13], and that he had received treatment from Dr. Flynn for nosebleeds. [Tr., p. 14] Clearly, then, this impairment was not overlooked.

Next, Gragg argues that the ALJ improperly discounted the opinion of his treating physician, Dr. David Flynn. [Record No. 11-1, pp. 11-12] That opinion consists of a single page with the heading "Interrogatories to Treating Physician." [Tr., p. 653] Dr. Flynn stated on the form that Gragg suffers from pain and weakness in his right shoulder, frequent nose bleeds, chest pain, and depression. [*Id.*] He opined that Gragg's ailments would "often" interfere with his ability to work and would affect his work attendance more than six days a month, "if he did a job with a lot of lifting." [*Id.*] ALJ Sloss found Dr. Flynn's opinion to be "somewhat conclusory, providing very little explanation of the evidence he relied on in forming" it. [Tr., p. 18] Moreover, the ALJ noted, the opinion "departs substantially from the rest of the evidence of record," and even "[t]he doctor's own reports fail to reveal the type of significant clinical and laboratory abnormalities one would expect if [Gragg] were in fact disabled." [Tr., p. 19] Consequently, ALJ Sloss declined to adopt Dr. Flynn's assessment. [*Id.*]

Gragg protests that if the ALJ found the opinion lacking, "he should have contacted [Dr. Flynn] for clarification" or asked Gragg's counsel to provide additional information. [Record No. 11-1, p. 11] However, the record contains several years' worth of treatment notes from Dr. Flynn, none of which indicate that Gragg's impairments would significantly limit his ability to work. [*See* Tr., pp. 388-400, 483-88, 630] An "ALJ 'is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.'" *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 509 (6th Cir. 2006) (per

curiam) (quoting *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001)). Although "[g]enerally, the opinions of treating physicians are given substantial, if not controlling, deference," that rule applies only when the opinion in question is "supported by objective medical evidence." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). In the absence of such supporting evidence, "the ALJ is entitled to discredit the opinion as long as he sets forth a reasoned basis for [his] rejection." *Jones*, 336 F.3d at 477. Here, ALJ Sloss thoroughly explained his rejection of Dr. Flynn's opinion: he found it to be conclusory, unsupported by objective medical evidence, and inconsistent with the doctor's own treatment notes and other evidence of record.[3] [Tr., pp. 18-19] These are proper reasons for discounting a treating source's opinion. *See* 20 C.F.R. § 404.1527(d) (factors to be considered in determining weight to be given treating source's opinion include how much relevant evidence supports the opinion, how well the opinion is explained by the source, and how consistent the opinion is with the record as a whole); *Kornecky*, 167 F. App'x at 509 ("[T]he ALJ 'is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.'" (quoting *Buxton*, 246 F.3d at 773)); *Warner*, 375 F.3d at 390 ("Treating physicians' opinions are only given [substantial or controlling] deference when supported by objective medical evidence.").

---

3  Gragg argues that "[t]he ALJ's remark that physicians are often motivated by sympathy toward their patients, or that patients exert pressure on them to assist in the disability claim, is not a proper basis on which to reject a treating source opinion." [Record No. 11-1, p. 12 (citation omitted)] While the ALJ did make that observation, the Court reads it not as a reason for discounting Dr. Flynn's opinion, but rather as a possible explanation for why the opinion reflected Gragg's subjective complaints more than the medical evidence of record. [*See* Tr., p. 18-19]

Finally, Gragg asserts that the ALJ violated Social Security Ruling (SSR) 96-7p by failing to acknowledge statements from Gragg's former coworkers and a Social Security Administration (SSA) employee regarding his symptoms. [Record No. 11-1, p. 13] But the fact that ALJ Sloss did not mention those statements in his decision does not mean that he neglected to consider them. *See Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) ("SSR 96-7p only requires that the ALJ consider other employees' observations of [the claimant]. The ALJ's failure to discuss those observations does not indicate that they were not considered."). The Sixth Circuit has noted that "an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky*, 167 F. App'x at 508 (internal quotation marks omitted); *see also Thacker*, 99 F. App'x at 665 ("An ALJ need not discuss every piece of evidence in the record for his decision to stand."). The Court thus finds no error in this omission.

### B. The Weight Given to Dr. Sahner's Opinion

Gragg also argues that ALJ Sloss should not have rejected the opinion of Dr. Crystal Sahner, a psychologist who performed a consultative examination of Gragg in February 2008. Dr. Sahner concluded that Gragg suffered from depressive disorder, not otherwise specified; impulse control disorder, not otherwise specified; and social anxiety disorder. [Tr., p. 466] She assigned a Global Assessment of Functioning score of 48. [Tr., p. 467] Although Dr. Sahner found that Gragg's ability to follow simple instructions was adequate, she opined that his "ability to interact appropriately with fellow workers and supervisors in a workplace setting, cognitively and emotionally is markedly affected due to [his] impulse control problems." [*Id.*] Also

markedly affected, according to Dr. Sahner, is Gragg's "ability to tolerate the stress and pressure of day-to-day employment . . . in a workplace setting due to his low tolerance frustration [sic], impulse control problems, and current degree of depression." [*Id.*] Nevertheless, she found it "important to note . . . that [Gragg] did not stop his employment due to mental health problems." [*Id.*] Finally, Dr. Sahner determined that Gragg's "ability to sustain attention and concentration towards performance of simple, repetitive tasks . . . is moderately affected due to his depression and low frustration tolerance." [*Id.*]

However, the ALJ found Dr. Sahner's conclusions to be "inconsistent with her evaluation," as well as with the other evidence of record. [Tr., p. 19] Gragg reported to Dr. Sahner that he goes shopping, visits his family, and attends classes at a community college. [*Id.*; *see id.*, p. 464] He also stated in his Function Report that he regularly goes to a car lot "to chit chat." [Tr., p. 117] The ALJ observed that Gragg "demonstrated no abnormal social behaviors during the hearing." [Tr., p. 16] The Court finds sufficient support in the record for the ALJ's determination that Gragg "is apparently able to function in an appropriate manner in the public domain." [*Id.*] Furthermore, although Gragg indicated that he has trouble getting along with others when he is not on medication [Tr., p. 118], he currently takes Celexa (citalopram) for "temper, nerves, [and] stress." [Tr., p. 128] His treating physician, Dr. Flynn, has noted on several occasions that the medicine is effective. [*See* Tr., p. 388 (Oct. 19, 2007: "His mood has done well with his [C]elexa."); *id.*, p. 647 (Apr. 14, 2009: "His mood has been good on his meds."); *see also id.*, p. 483 (Mar. 21, 2008: "His mood is stable."); *id.* at 630 (Aug. 13, 2008: same)] Finally, when asked on the Disability Report how his impairments affect his ability to

work, Gragg described only physical limitations. [Tr., p. 122] In short, there is ample support for the ALJ's decision to reject Dr. Sahner's opinion.

Nor do the observations of Gragg's former coworkers regarding his "mood swings" compel the conclusion that he is incapable of functioning in a work environment. [*See* Tr., pp. 152-58] The Court, like Dr. Sahner, finds it significant that Gragg was not forced to stop working as a result of any psychological (or physical) problems, but rather because his place of employment closed down.[4] [Tr., pp. 122, 467] Moreover, Gragg stated in his Function Report that he had never lost a job because of difficulty getting along with others. [Tr., p. 119] He also indicated that he has no problem with authority figures, such as bosses, "as long as they don't cuss or scream at" him. [*Id.*] Thus, Dr. Sahner's conclusions are contradicted to some extent by Gragg's own statements, as well as by other evidence of record.

In summary, the evidence demonstrates that while Gragg has some limitations with respect to his ability to interact appropriately with others and tolerate stress, those limitations are not as severe as described in Dr. Sahner's report, which appears to be based largely on Gragg's subjective complaints. The ALJ therefore did not err in discounting Dr. Sahner's opinion and instead crediting the assessments of the state agency psychologists, who found Gragg to be only moderately limited in his abilities to "interact appropriately with the general public" and "respond appropriately to changes in the work setting." [Tr., pp. 513, 572] These limitations were reflected in the RFC assigned by ALJ Sloss, which provided that Gragg "is limited to jobs where he has only occasional interaction with the public." [Tr., p. 17]

---

4     The fact that Gragg's alleged onset date is the day after he lost his job (for reasons unrelated to any physical or mental impairment) further undermines his claim of disability. [*See* Tr., p. 122]

## IV.

Although Gragg has established that he suffers from some medical impairments, he has not established that his symptoms are severe enough to warrant a period of disability or disability insurance benefits. The ALJ properly evaluated the evidence as to Gragg's physical impairments. Moreover, he did not err in discounting Dr. Sahner's opinion. Viewing the record as a whole, substantial evidence supports ALJ Sloss's determination that Gragg is not disabled. Accordingly, it is hereby

**ORDERED** as follows:

(1) Plaintiff Jeffrey Lee Gragg's Motion for Summary Judgment [Record No. 11] is **DENIED**;

(2) Defendant Michael J. Astrue's Motion for Summary Judgment [Record No. 12] is **GRANTED**; and

(3) The administrative decision will be **AFFIRMED** by separate judgment entered this date.

This 26th day of April, 2011.



Signed By:
*Danny C. Reeves* DCR
United States District Judge